## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA

In re:                                          Chapter 11

THOMASBORO LANDCO, LLC,                          Case No. 22-10260-HAC

     Debtor.

_____/

## <u>ORDER CONFIRMING PLAN</u>

THIS CASE came before the Court for a duly noticed hearing on July 12, 2022, at 8:30 a.m. (the "**Confirmation Hearing**") to consider confirmation of the *First Amended Plan of Reorganization for Thomasboro Landco, LLC* (Doc. No. 106) (the "**Plan**"), which was transmitted to all creditors and equity security holders as required by the Bankruptcy Code. Appearances were made as reflected on the record.

The Court, having considered the Plan, the *Ballot Tabulation* (Doc. No. 130), the proffer of Paul Uter made during the Confirmation Hearing, and the argument of counsel, and for the reasons stated orally and recorded in open court which shall constitute the decision of this Court, the Court finds as follows:[1]

    i.       This Court has jurisdiction pursuant to 28 U.S.C. §1334 over the Debtor, the Debtor's Chapter 11 case, all Claims against and Equity Interests in the Debtor, all Creditors of the Debtor, all Holders of Claims against and Holders of Equity Interests in the Debtor; and all the Debtor's Assets, wherever located. Confirmation of the Plan is a "core proceeding" pursuant to, and without limitation, 28 U.S.C. §§157(b)(2)(A), (L), and (O). The Court has jurisdiction to enter

---

[1] All capitalized terms used in, but not defined in, this Confirmation Order shall have the meanings ascribed to them in the Bankruptcy Code and the Plan.

a final order with respect to Confirmation of the Plan. Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

ii.   Pursuant to the Court's *Order Approving First Amended Disclosure Statement, Setting Confirmation Hearing, and Establishing Related Deadlines* (Doc. No. 112) (the "**Disclosure Statement Order**"), copies of the Debtor's approved Disclosure Statement, the Plan, the Disclosure Statement Order, and a ballot were mailed by the Debtor to all Creditors of the Debtor in compliance with the Disclosure Statement Order, the Bankruptcy Rules, and the Local Rules of this Court. An appropriate certificate was filed in the record regarding such service (Doc. No. 116). Such service was adequate, sufficient and complied with due process.

iii.   Timely and proper notice of the Confirmation Hearing and the time fixed for filing objections to and ballots accepting or rejecting the Plan was given to all Creditors and all parties in interest. Such notice complied with due process and was adequate and sufficient to notify all Creditors and parties in interest of the Confirmation Hearing and the objection and voting deadlines as to the Plan. Such notice also complied in all respects with orders of this Court, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court, and otherwise satisfied the requirements of due process.

iv.   The Debtor's approved Disclosure Statement and the Plan proposed that distributions under the Plan will be funded from the DIP Loan and the net disposable income that the Reorganized Debtor will receive from the sale or disposition of Developed Lots after the Effective Date.

v.   The requirements for confirmation of the Plan set forth in 11 U.S.C. § 1129(a) & (b) have been satisfied.

The Court having made the preceding findings of fact, it is hereby **ORDERED** that:

1.	The Plan is confirmed.  A copy of the confirmed Plan is attached hereto as **Exhibit A**.

2.	The Effective Date of the Plan shall be fourteen (14) days following the entry of this Confirmation Order and, if the 14th day following entry of such order is not a Business Day, the first Business Day following the passage of fourteen (14) days.

3.	Subject to the conditions set forth in the Plan and this Confirmation Order, the Debtor, the Reorganized Debtor, each of their agents, attorneys, and authorized representatives are authorized, empowered, and directed to take all such steps necessary to effectuate and implement the Plan, including, without limitation, the execution and delivery of documents necessary to implement the Plan and the various other documents, agreements, and instruments contemplated by the Plan and the various agreements referenced in the Plan.

4.	Pursuant to Section 1146(a) of the Bankruptcy Code, any transfer from the Debtor or the Reorganized Debtor to any person or entity and the making or delivery of an instrument or instruments of transfer pursuant to the Plan and/or this Confirmation Order shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax, governmental assessment, or fee, including any applicable transfer taxes or fees and mortgage recording taxes or fees.  All filing officers and their agents are directed to accept from the Debtor or the Reorganized Debtor (as the case may be) for recording and to record such documents and instruments that may be required to effectuate the Plan, including without limitation any financing, security, mortgage, or similar documents as are customarily recorded in connection with commercial transactions, immediately upon presentation of such documents, unconditionally and without reservation, without the presentation of any declarations, instruments, or returns otherwise required for recording or filing

3

and without the assessment or payment of any stamp tax, transfer tax, or similar tax imposed by any state or local law, and shall not require payment of such tax.

5.      Unless extended by order of the Court, all objections to Claims shall be filed within ninety (90) days after the Effective Date.  Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) ninety (90) days following the Effective Date or (b) the date sixty (60) days after the Debtor receives actual notice of the filing of such Claim.

6.      All professionals shall file applications for fees and costs incurred through the date of the entry of this Confirmation Order on or before the date that is thirty (30) days after the entry of this Confirmation Order.

7.      The Debtor shall file with the Court an initial post-confirmation report (BA-4) within 60 days from the date of this Order, and quarterly thereafter until further order of the Court. The initial report shall describe the progress made in consummating the Plan during the period covered by the report.  The reports shall include (1) a statement of distribution by class, name of creditor, date of distribution, and amount paid; (2) a statement of transfer of property; and (3) a statement of affirmation that the provisions of the confirmed plan are being substantially complied with.

8.      Until the case is closed, the Debtor shall file with the Court on a quarterly basis a report of disbursements (BA-2) for that quarter and pay a fee pursuant to 28 U.S.C. §§ 1930(a)(6) and (7).

9.      To the extent of any inconsistency between the terms of the Plan and this Confirmation Order, the terms of the Confirmation Order shall govern.

4

10.     Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, until this case is closed, this Court shall retain the fullest and most extensive jurisdiction of this case that is permitted under applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.  Without limiting the generality of the foregoing, after Confirmation of the Plan and until this case is closed, this Court shall retain jurisdiction of this case for each of the specific purposes set forth in Article 12 of the Plan and enforcement of the *Order Granting Expedited Motion to Approve Compromise with D.R. Horton, Inc.* (Doc. No. 69).

11.     All causes of action of the Debtor are preserved including, without limitation, the Debtor's rights to enforce the settlement with DR Horton, as approved by the *Order Granting Expedited Motion to Approve Compromise with D.R. Horton, Inc.* (Doc. No. 69).

Dated:  July 21, 2022

HENRY A. CALLAWAY
U.S. BANKRUPTCY JUDGE

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
www.alsb.uscourts.gov


In re:                                              Chapter 11

THOMASBORO LANDCO, LLC,                              Case No. 22-10260-HAC

　　　　Debtor.
_____/


# FIRST AMENDED PLAN OF REORGANIZATION FOR THOMASBORO LANDCO, LLC

Edward J. Peterson
Alabama Bar No. 1848-E68E
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida   33602
Telephone: (813) 229-0144
Email:   epeterson@srbp.com
**ATTORNEYS FOR THOMASBORO LANDCO, LLC**

Mobile, Alabama
May 31, 2022

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT (AS DEFINED IN THIS PLAN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF ALABAMA, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST AND IMPAIRED EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THIS PLAN. THE DEBTOR RESERVES THE RIGHT TO FILE A FURTHER AMENDED OR AMENDED AND RESTATED PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME. REFERENCE IS MADE TO THE DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTOR'S HISTORY, BUSINESSES, PROPERTIES, AND RESULTS OF OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE REORGANIZATION CASE, AND THE MEANS OF FUNDING THIS PLAN. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT WILL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

8

# INTRODUCTION

Thomasboro Landco, LLC, the Debtor and Debtor in Possession in this Reorganization Case (the "**Debtor**"), proposes this First Amended Plan of Reorganization (the "**Plan**") pursuant to the provisions of Chapter 11 of the Bankruptcy Code and requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 1 of the Plan or as otherwise defined herein. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Interest until such time as the Debtor's Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Interests. The Debtor's Disclosure Statement was approved by the Bankruptcy Court through the entry of the Disclosure Statement Approval Order and has been distributed simultaneously with the Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, business, and operations, (b) a summary of significant events which have occurred to date in this Reorganization Case, (c) a summary of the means of implementing and funding the Plan, and (d) the procedures for voting on the Plan. No materials, other than the accompanying Disclosure Statement and any exhibits and schedules and documents attached thereto or referenced therein, have been approved by the Debtor for use in soliciting acceptances or rejections of the Plan. **All Holders of Claims against and Equity Interests in the Debtor entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.** No materials other than the Disclosure Statement and any exhibits and schedules attached to or referenced in the Disclosure Statement have been approved by the Bankruptcy Court or the Debtor for use in soliciting acceptances or rejections of the Plan.

In summary, but subject to more specific details provided herein, the Plan provides for distributions to Creditors with Allowed Claims pursuant to a classic stand-alone plan. The Stone Farm Lenders will receive payment in full of the amount of their Allowed Secured Claims, and the DIP Loan Claims and Allowed Claims of Unsecured Creditors will be paid off upon the sale or disposition of Developed Lots.

NOTWITHSTANDING ANYTHING IN THIS PLAN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON SECURED CREDITORS, UNSECURED CREDITORS, OR HOLDERS OF EQUITY INTERESTS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY.

4862-0466-4361, v. 3

# Article 1

## DEFINED TERMS

As used in the Plan, the following terms, which appear in this Plan as capitalized terms, will have the meanings set forth below:

**1.01** *"Administrative Expense"* means—

(a)    any cost or expense of administration of the Reorganization Case that is allowed under Section 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application or other Bankruptcy Court-approved pleading seeking such expense in the Reorganization Case on or before the applicable Administrative Expense Claims Bar Date, including—

(1)    any actual and necessary costs and expenses of preserving the Estate or operating the businesses of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date;

(2)    any Post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its business;

(3)    any payment required to be made to cure a default under an Assumed Contract, including any Cure Claim, to the extent allowed by a Final Order of the Bankruptcy Court;

(4)    any Claim granted administrative-expense priority status by a Final Order of the Bankruptcy Court;

(5)    any Claim by a Governmental Authority for non-ad valorem taxes that are assessed *in personam* (and for interest and/or penalties related to such taxes) for any tax year or period, to the extent such Claim accrues Post-petition; and

(6)    compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court);

(b)    any superpriority Claim;

(c)    all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911–1930; and

(d)    any and all other costs or expenses of administration of the Reorganization Case that are allowed by Final Order of the Bankruptcy Court.

10

The terms "Administrative Expense" and "Administrative Expense Claim" do not include any Priority Tax Claim, any Secured Claim premised upon ad valorem taxes, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims designated in Classes under the Plan.

**1.02** *"Administrative Expense Bar Date"* means, subject to § 3.04 of this Plan, the date ordered by the Bankruptcy Court or the date established by the Bankruptcy Rules as the last day for filing an application or other Bankruptcy Court approved pleading for an Administrative Expense. In the case of an Administrative Expense deemed to arise after the date ordered by the Court or established by the Bankruptcy Rules, the Administrative Expense Bar Date will be the Confirmation Date.

**1.03** *"Administrative Expense Claim"* means any Claim for the payment of an Administrative Expense. The terms "Administrative Expense(s)," "Administrative Claim(s)," and "Administrative Expense Claim(s)" may be used interchangeably in this Plan.

**1.04** *"Affiliate"* has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**1.05** *"Allowed Amount"* means the dollar amount in which a Claim is Allowed.

**1.06** *"Allowed Claim"* means a Claim or that portion of a Claim that is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (x) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) any objection made has been determined and the Claim has been allowed by a Final Order (but only to the extent so allowed). "Allowed Claim" will also include a Claim that is allowed by the Bankruptcy Court (a) in any contract, instrument, or other agreement or document entered into in connection with the Plan; (b) in a Final Order; or (c) pursuant to the terms of the Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

**1.07** *"Allowed Class . . . Claim"* means an Allowed Claim in the particular Class(es) or categories described.

**1.08** *"Assumed Contract"* means any Prepetition executory contract or unexpired real or personal property lease assumed by the Debtor during the Reorganization Case pursuant to a Final Order of the Bankruptcy Court.

**1.09** *"Ballot"* means the ballot accompanying the Disclosure Statement upon which Holders of Impaired Claims or Impaired Equity Interests entitled to vote on the Plan will indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

**1.10** *"Bankruptcy Code"* means Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*), as in effect on the Petition Date, together with all amendments and modifications to the Code that were subsequently made applicable to the Reorganization Case.

**1.11** *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of Alabama, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Reorganization Case.

**1.12** *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (S.D. Ala. L.B.R.), as in effect on the Petition Date, together with all amendments and modifications to the Rules that were subsequently made applicable to the Reorganization Case.

**1.13** *"Bar Date"* means the bar date(s) established by the Bankruptcy Court from time to time as the last day for filing Proofs of Claim against, or proofs of Equity Interest in, the Debtor, including with respect to executory contracts and unexpired leases that are rejected pursuant to the Plan, pursuant to a Final Order of the Bankruptcy Court or otherwise pursuant to Section 365 of the Bankruptcy Code; provided, however, that, when used in the Plan, the term "Bar Date" will not include the Administrative Expense Claims Bar Date. Unless otherwise specified by Final Order of the Bankruptcy Court, the Bar Date means June 13, 2022 (as fixed by the Notice of the Bankruptcy Court entered as Doc. No. 6 in the Thomasboro Case Docket).

**1.14** *"Business Day"* means any day other than a Saturday, Sunday, "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or day on which weather or other conditions have made the Clerk's office inaccessible.

**1.15** *"Cash"* means cash, cash equivalents, and other readily marketable direct obligations of the United States of America, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States of America, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Reorganized Debtor drawn on a domestic bank.

**1.16** *"Carve-Out"* means the carve-out provided under the DIP Loan Documents for Allowed Administrative Expense Claims, including Allowed Administrative Expense Claims of Professionals.

**1.17** *"Causes of Action"* means any and all of the Estate's and the Debtor's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, including all rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the

12

Bankruptcy Code, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including claims of the type referred to in the Disclosure Statement; provided, however, that, when used in the Plan, the term "Causes of Action" does not include any Claims, obligations, suits, judgments, damages, rights, remedies, Causes of Action, charges, costs, Debts, indebtedness, or Liabilities released or waived pursuant to Article 7 of the Plan or by order of the Bankruptcy Court. When used in the Plan, the term "Causes of Action" will also specifically include any claims, demands, rights, and causes of action that may only be asserted by a Person other than the Debtor (including the Holder of a Claim or Equity Interest) on a derivative or other basis. Some of the Causes of Action are described in further detail in the Disclosure Statement. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement. The Reorganized Debtor will not be estopped or precluded under any theory from pursuing the Causes of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

1.18    *"Claim"* has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in the Plan, when used in the Plan, the term "Claim" will be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise, including Environmental Claims and Tort Claims. As used in the Plan, the term "Claim" also includes a Claim against any Affiliate or Subsidiary, the Holder of which holds or believes it holds a Claim against any of the Debtor arising from or related to the same or similar facts and circumstances surrounding the claim against the Affiliate or Subsidiary.

1.19    *"Class"* means a category of Claims or Equity Interests classified together as described in the Plan.

1.20    *"Clerk"* means the Clerk of the Bankruptcy Court.

1.21    *"Code"* means the Bankruptcy Code.

1.22    *"Confirmation"* or *"Confirmation of the Plan"* means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

1.23    *"Confirmation Date"* means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

1.24    *"Confirmation Hearing"* means the hearing(s), which may be continued by the Bankruptcy Court from time to time, to be held before the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code in which the Debtor will seek Confirmation of the Plan.

1.25    *"Confirmation Order"* means the order of the Bankruptcy Court in the Reorganization Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, which order will be in form and substance reasonably satisfactory to the Debtor, and will include any amendments, supplements or modifications thereto made with the consent of the Debtor.

4862-0466-4361, v. 3

**1.26** *"Creditor"* means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims, and Unsecured Claims.

**1.27** *"Cure Claim"* means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtor pursuant to Section 365(b) of the Bankruptcy Code or otherwise, and any Claim for a default (monetary or nonmonetary) arising from, relating to, or in connection with the assumption by the Debtor of any Assumed Contract.

**1.28** *"Debt"* has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**1.29** *"Debtor"* means Thomasboro Landco, LLC, a North Carolina limited liability company and the Debtor in the Reorganization Case.

**1.30** *"Debtor in Possession"* means the Debtor as a debtor in possession in the Reorganization Case.

**1.31** *"Developed Lots"* means the Entitled Lots as developed by the Debtor.

**1.32** *"DIP Advances"* means the aggregate outstanding Postpetition advances extended to the Debtors by the DIP Lender in accordance with and subject to the terms and conditions of the DIP Financing Order and the DIP Loan.

**1.33** *"DIP Financing Order"* means the Order approving the DIP Loan.

**1.34** *"DIP Lender"* means LEGALIST DIP GC, LLC, in its capacity as lender in accordance with and subject to the terms and conditions of the DIP Financing Order.

**1.35** *"DIP Loan"* means that certain loan in the amount of not more than Twenty-Six Million and 00/100 Dollars ($26,000,000.00) to be advanced by the DIP Lender in favor of the Debtor pursuant to the terms of the DIP Loan Documents and the DIP Financing Order.

**1.36** *"DIP Loan Claims"* means any and all Claims of the DIP Lender represented by, relating to, or arising under or in connection with the DIP Financing Order, whether Administrative Expense Claims or Secured Claims, including the DIP Advances and accrued and unpaid interest.

**1.37** *"DIP Loan Documents"* means the credit agreement executed by the DIP Lender and the Debtor in connection with the DIP Loan, in addition to any other security agreements, mortgages, or other documents ancillary to the credit agreement.

**1.38** *"Disallowed Claim"* means any Claim that has been disallowed by a Bankruptcy Court order that has not been stayed pending appeal.

**1.39** *"Disclosure Statement"* means the Debtor's Disclosure Statement, including all attached exhibits, appendices, and schedules, as submitted and filed by the Debtor pursuant to Section 1125 of the Bankruptcy Code in respect of the Reorganization Case and approved by the Bankruptcy Court in the Disclosure Statement Approval Order, as such Disclosure Statement has been and may be amended, supplemented, modified, or amended and restated from time to time.

**1.40** *"Disclosure Statement Approval Order"* means the Order Conditionally Approving First Amended Disclosure Statement, Fixing Time to File Objections to the Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of the Plan, and Setting Deadlines with Respect to Confirmation Hearing, entered in the Bankruptcy Case.

**1.41** *"Disputed Claim"* means—

(a) any Claim (other than a Disallowed Claim) that has not been Allowed by an order of the Bankruptcy Court as to which—

(1) a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, and

(2) an objection has been or may be timely filed or deemed filed under applicable law and any such objection has not been

(A) withdrawn,

(B) overruled or denied by an order of the Bankruptcy Court, or

(C) sustained by an order of the Bankruptcy Court.

(b) a Claim that has not been Allowed by an order of the Bankruptcy Court, whether or not an objection has been or may be timely filed, if—

(1) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules,

(2) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules,

(3) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated,

(4) no corresponding Claim has been scheduled in the Schedules, or

(5) the Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect of the Claim.

(c) to the extent that an objection relates to the allowance of only a part of a Claim, the Claim to the extent of the objection, or

(d) to the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, the amount specified in the Proof of Claim that is in excess of the amount of the Claim as scheduled.

**1.42** *"Distribution"* means a distribution of Cash to a creditor on account of an Allowed Claim pursuant to the terms of the Plan.

**1.43** *"Distribution Date"* means the date distributions commence under the Plan.

15

**1.44** *"Docket"* means the docket or dockets in the Reorganization Case maintained by the Clerk.

**1.45** *"Doc. No."* means the number of the referenced document reflected on the Docket. Unless otherwise specified, "Doc. No." shall refer to the Galvin's Ridge Case Docket, which is designated as the "lead case" under the *Order Granting Debtor's Expedited Motion for Order Directing Joint Administration of Chapter 11 Cases Pursuant to Bankruptcy Rule 1015(b)* (Thomasboro Case Doc. No. 15).

**1.46** *"Effective Date"* means and will occur on the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date contained in Article 10 of the Plan have been satisfied (as determined by the Debtor) or waived by the Debtor.

**1.47** *"Entitled Lots"* means the approximately 2,500 entitled residential lots situated on the 1,137.4 acres of land owned by the Debtor in Brunswick County, North Carolina.

**1.48** *"Entity"* has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

**1.49** *"Environmental Claim"* means any Claim or demand now existing or hereafter arising, in the nature of or sounding in tort, contract, warranty, or under any other theory of law or equity, against the Debtor, any Affiliate or Subsidiary of the Debtor, their predecessors, successors or assigns, or their present or former officers, directors, or employees, arising out of, or related to, any Environmental Laws, including any Claim or demand (a) to restrict or enjoin, or recover damages, costs, or expenses to remedy, any release, environmental pollution, contamination, or nuisance or to require the Debtor to remedy or to reimburse, pay, or incur costs to remedy any release, environmental pollution, contamination, or nuisance; (b) to remedy, reimburse, compensate, or pay any damage, penalty, fine, or forfeiture for or to restrict or enjoin any violation of or alleged violation of any Environmental Laws; (c) to pay any contractual claim with respect to any Environmental Laws; or (d) to pay or reimburse any Person or Entity for personal injury (including worker's compensation, sickness, disease, or death), tangible or intangible property damage or natural resource damage arising out of, or relating to, any release, environmental pollution, contamination or nuisance, whether or not contemplated in subparagraphs (a) through (c) above, or whether or not such Claim or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, or whether or not the facts of or legal basis for such Claim or demand are known or unknown, or whether or not the injury or damage giving rise to such Claim or demand was diagnosable or undiagnosable, detectable or undetectable, before the Confirmation of the Plan or before the Final Decree Date. Notwithstanding anything to the contrary contained in the Plan, when used in the Plan, the term "Environmental Claim" will be broadly construed and will include (y) claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code and (z) demands that may or may not presently constitute "demands" within the meaning of Section 524(g)(5) of the Bankruptcy Code.

**1.50** *"Environmental Laws"* means (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and

16

Reauthorization Act of 1986, 42 U.S.C. §§ 9601, *et seq.*; (b) the Resource Conservation and Recovery Act, as amended by the Hazardous and Solid Waste Amendment of 1984, 42 U.S.C. §§ 6901, *et seq.*; (c) the Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*; (d) the Clean Water Act of 1977, 33 U.S.C. §§ 1251, *et seq.*; (e) the Toxic Substances Control Act, 15 U.S.C. §§ 2601, *et seq.*; (f) the Oil Pollution Act of 1990 (OPA 90); (g) all statutes or laws issued or promulgated by any Governmental Authority, as they may be amended from time to time, relating to environmental contamination or pollution, air pollution, water pollution, noise control, and/or the handling, transportation, discharge, existence, release, disposal or recovery of onsite or offsite hazardous, toxic or dangerous wastes, substances, chemicals, or materials (including petroleum); and (h) the ordinances, rules, regulations, orders, notices of violation, requests, demands, and requirements issued or promulgated by any Governmental Authority in connection with such statutes or laws.

      **1.51** ***"Equity Interests"*** means the interests in the Debtor held by all members of the Debtor.

      **1.52** ***"Estate"*** means the bankruptcy estate created for the Debtor under Section 541 of the Bankruptcy Code upon the commencement of the Reorganization Case.

      **1.53** ***"Estimation Hearing"*** means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

      **1.54** ***"Final Decree Date"*** means the date on which a Final Order has been entered closing the Reorganization Case.

      **1.55** ***"Final Order"*** means—

      (a)      an order, judgment, ruling, or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court that has jurisdiction over any proceeding in connection with the Reorganization Case for the purpose of such proceeding, which order, judgment, ruling, or other decree has not been reversed, vacated, stayed, modified, or amended and as to which—

      (1)      no appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has expired, or

      (2)      such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or

      (b)      a stipulation or other agreement entered into which has the effect of any such order, judgment, ruling, or other decree with like finality.

      **1.56** ***"Governmental Authority"*** means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality, or administration of the United States, a foreign country, or any state, or any provincial, territorial, municipal, state, local, or other governmental Entity in the United States of America or a foreign country.

4862-0466-4361, v. 3

**1.57** *"Holder"* means—

    (a)    as to any Claim—

        (1)    the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

        (2)    if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the Schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court; or

        (3)    if the owner or holder of such Claim has transferred the Claim to a third party, advised the Debtor or Reorganized Debtor in writing of such transfer and transferee, and filed notice of the transfer and transferee with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 3001(e); and

**1.58** *"Impaired"* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.59** *"Liabilities"* means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now, or hereafter owing, arising, due, or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any Affiliate, Subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any Affiliate, Subsidiary, predecessor, successor, or assign thereof, the Real Property, any other assets of the Debtor, the business or operations of the Debtor, the Reorganization Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, as used in the Plan, the term "Liabilities" does not include any obligation of the Reorganized Debtor expressly set forth in the Plan.

**1.60** *"Lien"* means, with respect to any asset or Property, any mortgage, pledge, security interest, lien, right of first refusal, option, or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract, judgment, or otherwise.

**1.61** *"Person"* means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency, or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

**1.62** *"Petition Date"* means February 11, 2022, the date on which the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4862-0466-4361, v. 3
Case 22-10260    Doc 137    Filed 07/21/22    Entered 07/21/22 12:23:46    Desc Main
Document    Page 18 of 39

**1.63** *"Plan," "the Plan,"* or *"this Plan"* means this Plan of Reorganization dated as of the date first set forth on the title page (together with all Exhibits to the Plan), as the Plan may be amended, supplemented, modified, or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

**1.64** *"Plan Documents"* means all documents that aid in effectuating the Plan, including without limitation all documents filed with the Bankruptcy Court at or before the Confirmation Hearing and the Confirmation Order.

**1.65** *"Post-confirmation"* means arising or accruing on or after the Confirmation Date.

**1.66** *"Post-petition"* means arising or accruing on or after the Petition Date and before the Effective Date.

**1.67** *"Pre-petition"* means arising or accruing prior to the Petition Date.

**1.68** *"Priority Claim"* means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) or subparagraph (9) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense, Priority Tax Claim, Secured Claim, or Unsecured Claim.

**1.69** *"Priority Tax Claim"* means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense, Secured Claim, or Unsecured Claim.

**1.70** *"Pro Rata Share"* means, with respect to any distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which will be the amount of such Holder's Allowed Claim and the denominator of which will be the sum of all Allowed Claims in such Class, all determined as of the applicable Distribution Date.

**1.71** *"Professional"* means any professional employed in the Reorganization Case with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Bankruptcy Code.

**1.72** *"Proof of Claim"* means a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001, 3002, or 3003.

**1.73** *"Property"* means any property or asset of any kind in which the Debtor or the Estate holds an interest, whether real, personal or mixed, tangible or intangible, whether now owned or hereafter acquired or arising, and wherever located, and any interest of any kind in such property or asset.

**1.74** *"Reorganization Case"* means the case commenced in the Bankruptcy Court by the Debtor on the Petition Date as *In re Thomasboro Landco, LLC,* bearing Case No. 22-10260-bk-JCO.

4862-0466-4361, v. 3

**1.75** *"Reorganized Debtor"* means Thomasboro Landco, LLC on and after the Effective Date of the Plan.

**1.76** *"Rules"* means the Bankruptcy Rules.

**1.77** *"Schedules"* means, collectively, the Schedules and Statement of Financial Affairs filed by the Debtor in the Reorganization Case pursuant to Bankruptcy Rule 1007, as amended or supplemented from time to time.

**1.78** *"Secured Claim"* means any Claim that is—

    (a)    secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law; or

    (b)    subject to setoff under Section 553 of the Bankruptcy Code;

but, with respect to both paragraphs (a) and (b) of this section, only to the extent of the Estate's interest in the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estate's interest in the Property securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, the resulting deficiency constitutes an Unsecured Claim.

**1.79** *"Secured Creditor"* means any Creditor holding a Secured Claim.

**1.80** *"Stichter Riedel"* means Stichter, Riedel, Blain & Postler, P.A., in its Bankruptcy Court-approved capacity as Chapter 11 bankruptcy counsel to the Debtor.

**1.81** *"Stone Farm Lenders"* means, collectively, Stone Farm Investment, LLC; OIB Holdings, LLC; OI Investment Properties, LLC; DW Legacy Assets, LLC; LW Legacy Assets, LLC; and Decarol Williamson and Ladane Williamson as Trustees of the Virginia Alma Williamson Trust under the Will of Odell Williamson dated September 9, 2010.

**1.82** *"Superpriority Administrative Expense"* means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Sections 364(c)(1) and 365 of the Bankruptcy Code.

**1.83** *"Tax Collector"* means with respect to each county in which the Debtor conducted business or owned property, the duly elected Tax Collector for that county.

**1.84** *"Thomasboro Case Docket"* means the separate Docket for the Chapter 11 case of the Debtor, Case No. Case No. 22-10260-JCO.

**1.85** *"Unimpaired Claim"* means a Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.86** ***"United States Bankruptcy Administrator"*** means Mark S. Zimlich, as the United States Bankruptcy Administrator for the Southern District of Alabama.

**1.87** ***"Unsecured Claim"*** means any Claim that is not an Administrative Expense, Priority Tax Claim, Priority Claim, or Secured Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.88** ***"Unsecured Creditor"*** means any Creditor holding an Unsecured Claim.

# Article 2
## CONTROLLING LAW AND RULES OF CONSTRUCTION

**2.01** ***Reference to Bankruptcy Code and Bankruptcy Rules.*** Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or the Bankruptcy Rules will have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. In the instance of a conflict or ambiguity, the Bankruptcy Code or the Bankruptcy Rules, as applicable, will control.

**2.02** ***Rules of Construction.*** For purposes of the Plan, the following rules of construction will apply:

(a) Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural.

(b) Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document will be substantially in such form or substantially on such terms and conditions.

(c) Any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented.

(d) If the description in the Plan of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit will control.

(e) Unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan.

(f) Unless the context requires otherwise, the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular article or section or subsection of the Plan.

(g) Any phrase containing the term "include" or "including" will mean including without limitation.

(h) All of the Exhibits referred to in the Plan will be deemed incorporated herein by such reference and made a part hereof for all purposes.

(i) The rules of construction set forth in Section 102 of the Bankruptcy Code will apply in the construction of the Plan to the extent that such rules are not inconsistent with any other provision of this §2.02 of the Plan.

21

# Article 3
## TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**3.01** *Non-classification.* In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth in this Article 3.

**3.02** *Administrative Expenses*. Except as otherwise provided in this Article 3 of the Plan, each Holder of an Allowed Administrative Expense Claim, except for the DIP Lender, will be paid (a) on the Distribution Date, an amount, in Cash, equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, subject to a setoff by the Debtor against amounts owed on account of any and all Causes of Action existing against the Holder of such Allowed Administrative Expense Claim, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor.

**3.03** *DIP Lender's Administrative Expense Claim and Carve-Out*. The DIP Loan Claims constitute Superpriority Administrative Expense Claims but are subject to the agreed-upon Carve-Out. The DIP Loan Claims shall not receive payment as an Administrative Expense Claim under this Article 3, but shall receive the treatment provided for in Section 5.05, which is consistent with the terms of the DIP Loan Documents.

**3.04** *Fees and Charges*. All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911–1930, through the Confirmation Date, as determined by the Bankruptcy Court in the Confirmation Order, will be paid on or before the Effective Date.

**3.05** *Applications for Allowance of Administrative Expense Claims.* All Holders of Administrative Expense Claims (including Holders of any Claims for Post-petition federal, state, or local taxes and Holders of Claims under Section 503(b)(9) of the Bankruptcy Code) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date shall be forever barred from asserting such Administrative Expense Claim against the Debtor. No Person shall have an Allowed Administrative Expense Claim by virtue of having filed a proof of claim on a Form 410 or otherwise.

**3.06** *Priority Tax Claims.* Each Holder of an Allowed Priority Tax Claim will be paid (a) on the Distribution Date, an amount, in Cash, equal to the Allowed Amount of its Priority Tax Claim, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor.

# Article 4
## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

**4.01** *In General.* Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests. A Claim or Equity Interest is classified (a) in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include all Claims that qualify within the description of that Class.

**4.02** *Classes.* For purposes of this Plan, Claims and Equity Interests are classified as follows:

    (a)    Class 1 comprises all Priority Claims.

    (b)    Class 2 comprises all Secured Claims of the Stone Farm Lenders.

    (c)    Class 3 comprises the DIP Loan Claims.

    (d)    Class 4 comprises all Allowed Unsecured Claims not otherwise classified in the Plan.

    (e)    Class 5 comprises all Equity Interests.

# Article 5
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**5.01** *In General.* Claims and Equity Interests will be treated under the Plan in the manner set forth in this Article 5. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims, of any nature whatsoever, and Allowed Equity Interests.

**5.02** *Unclassified Claims.* Each Holder of an Allowed Administrative Expense Claim (except for the DIP Lender, which will receive the treatment set forth in Section 5.05 below) or an Allowed Priority Tax Claim will receive the treatment set forth in Article 3 of the Plan.

**5.03** *Class 1: Priority Claims.* Each Holder of an Allowed Priority Claim will receive (a) on the Distribution Date, an amount, in Cash, equal to the Allowed Amount of its Priority Claim, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by the Holder of such Allowed Priority Claim and the Debtor or the Reorganized Debtor, or (c) as otherwise ordered by Final Order. Class 1 is Unimpaired.

**5.04** *Class 2: Secured Claims of the Stone Farm Lenders.* Class 2 consists of all Allowed Secured Claims of the Stone Farm Lenders, which shall include post-petition interest and reasonable attorneys' fees and costs. The Allowed Secured Claims of the Stone Farm Lenders will be paid in full from the DIP Loan proceeds. Such payment shall be in full satisfaction of the Allowed Secured Claim of the Stone Farm Lenders. Class 2 is Unimpaired.

**5.05** *Class 3: DIP Loan Claims.* Class 3 consists of all DIP Loan Claims. The Reorganized Debtor shall pay the DIP Loan Claims in full in accordance with the DIP Loan

23

Documents. The terms of the DIP Loan Documents shall remain in full force and effect, and the DIP Lender shall retain all liens and security interests in the Collateral provided for under the DIP Loan Documents and the DIP Financing Order. Class 3 is Unimpaired.

      **5.06**    ***Class 4: Unsecured Claims Not Otherwise Classified***.  Class 4 comprises any Allowed Unsecured Claims not otherwise classified under the Plan. Holders of Class 4 Allowed Unsecured Claims shall receive payment in full, after payment of the DIP Loan Claims in full, from net disposable income that the Reorganized Debtor receives from the sale or disposition of Developed Lots after the Effective Date. The Reorganized Debtor anticipates that such proceeds will be sufficient to pay off the Holders of Class 4 Allowed Unsecured Claims within 36 months. Notwithstanding the foregoing, a Holder of a Class 4 Unsecured Claim can agree to receive payment upon such other terms mutually agreeable between such Holder and the Debtor. Class 4 is Impaired.

      **5.07**    ***Class 5: Equity Interests.***  Class 5 comprises all Equity Interests in the Debtor. All Holders of Equity Interests in the Debtor will retain their Equity Interests in the Reorganized Debtor in the same proportion as such interests were held on the Petition Date.  Class 5 is Unimpaired.

# Article 6
## ACCEPTANCE OR REJECTION OF PLAN

      **6.01**    ***Each Impaired Class Entitled to Vote Separately.***  The Holders of Claims in each Impaired Class of Claims will be entitled to vote separately to accept or reject the Plan.

      **6.02**    ***Acceptance by Impaired Classes***.  Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims will have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (⅔) in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half (½) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Equity Interests will have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (⅔) in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

      **6.03**    ***Presumed Acceptance of Plan.***  Under Section 1126(f) of the Bankruptcy Code, the Holders of Claims in Unimpaired Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Except as otherwise expressly provided in the Plan, nothing contained in the Plan or otherwise will affect the Debtor's or the Reorganized Debtor's rights and legal and equitable claims or defenses in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

# Article 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** *Rejection of Executory Contracts and Unexpired Leases.* Any executory contract or unexpired lease as of the Petition Date that has not been expressly assumed by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date will be deemed rejected by the Debtor as of the Effective Date unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease. The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions and rejections described in this Article 7, pursuant to Section 365 of the Bankruptcy Code.

**7.02** *Claims Arising from Rejected Executory Contracts and Unexpired Leases*. Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease and served upon the Reorganized Debtor or such Claim will be forever barred and unenforceable against the Debtor and/or the Reorganized Debtor. Such Claims, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, will be Class 4 Allowed Claims. Any such Claims that become Disputed Claims will be Class 4 Disputed Claims for purposes of administration of payments to Holders of Class 4 Claims. The Plan, the Confirmation Order, and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease will constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

# Article 8
## MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

**8.01** *Overview.* The Plan provides for the payment of Allowed Claims as described in Article 5 above from the DIP Loan and the net disposable income that the Reorganized Debtor will receive from the sale or disposition of Developed Lots after the Effective Date. The Debtor has filed the following motions to sell the Developed Lots: (a) *Emergency Motion for Authority to Sell Real Property Free and Clear of Liens, Claims, and Encumbrances and Request for Expedited Hearing (Phase 1 Thomasboro PUD Concept, 149 Lots)* (Doc. No. 86); (b) *Emergency Motion for Authority to Sell Real Property Free and Clear of Liens, Claims, and Encumbrances and Request for Expedited Hearing (Phase 1 Thomasboro PUD Concept, 100 52' Wide Lots)* (Doc. No. 87); and (c) *Emergency Motion for Authority to Sell Real Property Free and Clear of Liens, Claims, and Encumbrances and Request for Expedited Hearing (Phase 1 Thomasboro PUD Concept, 115 52' Lots, 174 42' Lots* (Doc. No. 88). These sales are pursuant to and under the Plan and are entitled to the protection of 11 U.S.C. § 1146 and shall not be taxed under any law imposing a stamp tax or similar tax.

**8.02** *Continued Corporate Existence.* The Debtor will continue to exist, as the Reorganized Debtor, after the Effective Date as a limited liability company with all of the powers of a limited liability company under North Carolina law and pursuant to its articles of organization,

operating agreement, or other organizational documents in effect prior to the Effective Date, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date.

**8.03    *Management and Executive Officers of the Reorganized Debtor.***    The management of the Debtor will remain the same and shall serve from and after the Effective Date until successors are duly elected or appointed and qualified or until its earlier resignation or removal in accordance with the Debtor's articles of organization and operating agreement. The Reorganized Debtor shall continue to honor the pre-petition compensation structures for the Debtor's managers. J. Marion Uter shall continue as the manager of the Reorganized Debtor.

**8.04    *Limited Liability Company Action.***    All matters provided for under the Plan involving the organizational structure of the Debtor or the Reorganized Debtor, or any limited liability company action to be taken by or required of the Debtor or the Reorganized Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the management of the Debtor or the Reorganized Debtor.

**8.05    *Effectuating Documents; Further Transactions.***    The current management of the Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan and the Plan Documents or to otherwise comply with applicable law. With respect to all Secured Claims, to the extent that the Debtor retains the Collateral subject to such Secured Claims, no financial covenants or other technical defaults will exist post-confirmation; and all defaults shall be subject to reasonable cure provisions.

**8.06    *Preservation of Causes of Action.***

(a)    On the Effective Date, the Causes of Action shall be vested in the Reorganized Debtor, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by Final Order. The Debtor is currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

(b)    No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE REORGANIZED DEBTOR. Creditors are advised that legal rights, claims and rights of action the Debtors may have against them, if they exist, are retained under the

26

Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or the Reorganized Debtor does not possess or does not intend to prosecute a particular claim or cause of action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, Claims, and rights of action of the Debtor, whether now known or unknown, whether arising at law or in equity, for the benefit of the Reorganized Debtor and the Debtor's Creditors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement.

(c)     The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Reorganized Debtor will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any <u>res judicata</u> or collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

# Article 9
## PROVISIONS GOVERNING DISTRIBUTION

**9.01**     *Initial Distributions.*     On the Effective Date, the Reorganized Debtor will make the initial distributions to Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims.

**9.02**     *Subsequent Distributions.* Subsequent distributions to Holders of Allowed Claims will be distributed as set forth in Article 5 of the Plan.

**9.03**     *Unclaimed Distributions.*

(a)     If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within 90 days of the date such check was issued, then the Reorganized Debtor will provide written notice to such Holder stating that unless such Holder negotiates such check within 30 days of the date of such notice, the amount of Cash attributable to such check will be deemed to be unclaimed, such Holder's Claim will no longer be deemed to be Allowed, and such Holder will be deemed to have no further Claim in respect of such check and will not participate in any further distributions under the Plan.

(b)     If a distribution pursuant to the Plan to any Holder of an Allowed Claim is returned to the Reorganized Debtor due to an incorrect or incomplete address (as

27

determined by the address listed in the Schedules, on a Proof of Claim, or on the most current version of the Court's mailing matrix for the Reorganization Case) for the Holder of such Allowed Claim, and no claim is made to the Reorganized Debtor as to such distribution within 120 days of the return of such distribution, then the amount of Cash attributable to such distribution will be deemed to be unclaimed and such Holder will be deemed to have no further Claim in respect of such distribution and will not participate in any further distributions under the Plan.

(c)　　Any unclaimed distribution described above shall become the property of the Reorganized Debtor.

**9.04　　*Transfers of Claims.*** In the event that the Holder of any Claim transfers such Claim on and after the Effective Date, the Holder shall immediately advise the Reorganized Debtor in writing of such transfer. The Reorganized Debtor will be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Reorganized Debtor has received written notice to the contrary. Each transferee of any Claim will take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtor will be entitled to assume conclusively that the transferee named in such notice will thereafter be vested with all rights and powers of the transferor under the Plan.

**9.05　　*Determination of Claims.***

(a)　　Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than ninety (90) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Reorganized Debtor), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to file late Unsecured Claims on (i) the Reorganized Debtor and (ii) such other parties as the Bankruptcy Court may direct. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 4 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) ninety (90) days following the Effective Date or (b) the date sixty (60) days after the Debtor receives actual notice of the filing of such Claim.

(b)　　Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor effects service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Reorganization Case on behalf of the Holder of a Claim.

(c)　　Disputed Claims will be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court

28

orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Reorganization Case, such Claim will be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely filed Proof of Claim, the Reorganized Debtor or other party in interest may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in Estimation Hearings will be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. With respect to Environmental Claims, determination of such Claims in Estimation Hearings will be binding only for purposes of voting and feasibility but not liquidation or distribution under the Plan. Procedures for specific Estimation Hearings, including provisions for discovery, will be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

**9.06** **De Minimis *Distributions on Account of Allowed Class 4 Unsecured Claims.*** To avoid the disproportionate expense and inconvenience associated with making *de minimis* distributions, the Reorganized Debtor will not be required to make, and will be excused from making, distributions in amounts of less than twenty-five dollars ($25.00) each to Holders of Allowed Class 4 Claims.

# Article 10
## CONDITIONS PRECEDENT

**10.01** ***Condition Precedent to Confirmation of the Plan.*** Entry of the Confirmation Order, effectiveness of Confirmation of the Plan, and the obligation of the Debtor to consummate this Plan are conditioned upon the Bankruptcy Court having made findings and determinations regarding this Plan as will enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan and in form and substance satisfactory to the Debtor.

**10.02** ***Conditions Precedent to Effective Date.*** The Effective Date will not occur and the Plan will not be consummated until (a) the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor on the Docket of the Reorganization Case; (b) no stay of the Confirmation Order is in effect; (c) 14 days have passed following the entry of the Confirmation Order and, if the 14th day following entry of such order is not a Business Day, the Business Day following the passage of 14 days has passed; and (d) the DIP Lender has funded an initial draw under the DIP Loan sufficient to pay (i) Allowed Administrative Expense Claims and (ii) the Stone Farm Lender's Class 2 Allowed Secured Claim.

**10.03** ***Waiver of Conditions Precedent.*** The Debtor may elect to waive any condition precedent set forth above that has not been satisfied on or before the date of the Confirmation Hearing.

# Article 11
## DISCHARGE, LIMITATION
## OF LIABILITY, AND GENERAL INJUNCTION

**11.01** ***Discharge of Claims***. **Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order will operate as a discharge, pursuant to**

**Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of any and all Debts of, and Claims of any nature whatsoever against the Debtor or its Estate that arose at any time prior to the Confirmation Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Without limiting the generality of the foregoing, on the Effective Date, the Debtor, the Estate, and the Reorganized Debtor, and their respective successors or assigns, will be discharged from any Claim or Debt that arose prior to the Confirmation Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim, will be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor, the Estate, the Reorganized Debtor, or any of their respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, Debts, rights, Causes of Action, remedies, Liabilities, or anything based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order will contain appropriate injunctive language to that effect. In accordance with the foregoing, except as specifically provided in the Plan or in the Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all such Claims and other Debts and Liabilities against the Debtor or its Estate, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor or its Estate, at any time, to the extent that such judgment relates to a discharged Claim, Liability or Debt. Notwithstanding the foregoing, if under the Plan the Reorganized Debtor is obligated to make payments to Holders of Allowed Claims, the Reorganized Debtor will remain obligated to make such payments. Holders of Administrative Expense Claims (including Holders of any Claims for Post-petition Federal, state, or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtor, the Estate, the Reorganized Debtor, or any of their respective Properties.**

**11.02** *General Injunction.* **Pursuant to Sections 105, 1123, 1129, and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Confirmation Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim or other Debt, Liability, or Equity Interest that is discharged pursuant to the terms of the Plan are and will be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged Claims, Debts, Liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents:**

30

**(a)** **commencing or continuing in any manner any action or other proceeding against the Debtor, the Estate, and the Reorganized Debtor;**

**(b)** **enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Estate, or the Reorganized Debtor;**

**(c)** **creating, perfecting or enforcing any Lien or encumbrance against the Debtor, the Estate, or the Reorganized Debtor; or**

**(d)** **commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.**

**The Debtor and the Reorganized Debtor will have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.**

**11.03** *Exculpation from Liability.* **The Debtor and the Reorganized Debtor, and their respective directors, officers, employees, agents, representatives, accountants, attorneys, and Professionals (acting in such capacity), and their respective heirs, executors, administrators, successors, and assigns (the "Exculpated Parties"), will neither have nor incur any Liability whatsoever to any Person or other entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Reorganization Case; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. The rights granted under this Article 11 are cumulative with and not restrictive of any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.**

**11.04** *Term of Certain Injunctions and Automatic Stay.* All injunctions or automatic stays provided for in the Reorganization Case pursuant to Sections 105, 362, and/or other applicable provisions of the Bankruptcy Code or otherwise and in existence on the Confirmation Date will remain in full force and effect until the Effective Date. Any preliminary or permanent injunction entered by the Bankruptcy Court will continue in full force and effect following the Confirmation Date and the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

**11.05** *No Liability for Tax Claims.* Unless a taxing Governmental Authority has asserted a Claim against the Debtor before the Bar Date or Administrative Expense Claims Bar Date established with respect to such Claim, no Claim of such Governmental Authority will be Allowed against the Debtor or Reorganized Debtor for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor, any of their Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or

franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

**11.06** *No Liability for Untimely Administrative Expense Claims.* Holders of Administrative Expense Claims (including Holders of any Claims for Post-petition Federal, state or local taxes) whose Administrative Expense Claim is not asserted through application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtor, or the Reorganized Debtor.

# Article 12
## RETENTION OF JURISDICTION

**12.01** *General Retention.* Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Reorganization Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction of the Reorganization Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

**12.02** *Specific Purposes.* In addition to the general retention of jurisdiction set forth in Section 12.01, after Confirmation of the Plan and until the Reorganization Case is closed, the Bankruptcy Court will retain jurisdiction of the Reorganization Case for the following specific purposes:

(a)      to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims or Equity Interests;

(b)      to determine any and all cases, controversies, suits or disputes arising under or relating to the Plan or the Confirmation Order (including regarding the effect of any release, discharge, or injunction provisions provided for herein or affected hereby and regarding whether conditions to the consummation and/or Effective Date of the Plan have been satisfied) and to enforce the obligations under the Plan;

(c)      to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Reorganization Case; provided, however, that this retention of jurisdiction will not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals after Confirmation of the Plan unless an objection to such fees and expenses has been made by the Debtor or the Reorganized Debtor;

(d)      to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection, assumption or assignment of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable (including Assumed Contracts), and to determine the allowance of any Claims resulting from the rejection thereof or any amount necessary to cure defaults in any assumed and/or assigned executory contracts or unexpired leases (including Assumed Contracts), including Cure Claims;

32

(e) to determine any and all motions, applications, adversary proceedings, contested or litigated matters, Causes of Action, and any other matters involving the Debtor commenced in connection with, or arising during, the Reorganization Case and pending on the Effective Date, including approval of proposed settlements thereof;

(f) to enforce, interpret, and administer the terms and provisions of the Plan and the Plan Documents;

(g) to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

(h) to consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtor or the Estate;

(i) to correct any defect, cure any omission, reconcile any inconsistency, and make any other necessary change or modification in or to the Disclosure Statement, the Plan, the Plan Documents, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

(j) to resolve any disputes concerning any release of a nondebtor under the Plan or the injunction against acts, employment of process, or actions against such nondebtor arising under the Plan;

(k) to enforce all orders, judgments, injunctions, and rulings entered in connection with the Reorganization Case;

(l) to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Documents;

(m) to review and approve any sale or transfer of assets or Property by the Debtor or Reorganized Debtor, including prior to or after the date of the Plan, and determine all questions and disputes regarding such sales or transfers;

(n) to determine all questions and disputes regarding title to the assets of the Debtor, the Estate, or the Reorganized Debtor;

(o) to determine any motions or contested matters relating to the Causes of Action, whether brought before or after the Effective Date;

(p) to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

(q) to resolve any determinations which may be requested by the Debtor or the Reorganized Debtor of any unpaid or potential tax liability or any matters relating to unpaid or potential tax liability under Sections 505 and 1146(d) of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion of taxable year ending on or before the Effective Date;

(r) to issue injunctions, enter, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

33

4862-0466-4361, v. 3

(s)     to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(t)     to determine any matters that may arise in connection with or relating to the DIP Loan, the DIP Loan Documents, or the DIP Financing Order;

(u)     to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Documents;

(v)     to enter such orders as are necessary to implement and enforce the injunctions described in this Plan;

(w)     to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

(x)     to enter an order concluding and terminating the Reorganization Case.

**12.03   *Closing of the Reorganization Case.*** In addition to the retention of jurisdiction set forth in Sections 12.01 and 12.02 above, the Bankruptcy Court will retain jurisdiction of the Reorganization Case to enter an order reopening the Reorganization Case after it has been closed.

# Article 13
## MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTION

**13.01   *Modification Prior to Entry of Confirmation Order.*** The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable requirements of the Bankruptcy Code and the Bankruptcy Rules. The Plan may not be altered, amended or modified without the written consent of the Debtor.

**13.02   *Modification After Entry of Confirmation Order.*** After the entry of the Confirmation Order, the Debtor may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtor may obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and (b) such modification will not materially adversely affect the interests, rights, treatment, or distributions of any Class of Allowed Claim or Allowed Equity Interest under the Plan.

**13.03   *Modification After Confirmation Date.*** After the Confirmation Date and before substantial consummation of the Plan, the Debtor may modify the Plan in a way that materially adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Debtor obtains Bankruptcy Court approval for such modification, after notice and a hearing; (c) such modification is accepted by at least two-thirds (⅔) in amount, and more than one-half (½) in number, of Allowed Claims or Allowed Equity Interests voting in each Class adversely affected by such modification; and (d) the Debtor complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

**13.04    *Confirmation Over Objections.*** In the event that any Class of Claims or Equity Interests votes against the Plan, and the Plan is not revoked or withdrawn in accordance with Section 13.02, the Debtor requests, and will be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such Impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtor may make such modifications or amendments to the Plan and such modifications or amendments will be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice of the Confirmation Hearing. No such modifications will require any resolicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court will require otherwise. Notwithstanding any provision of the Plan to the contrary, the Debtor reserves any and all rights they may have to challenge the validity, perfection, priority, scope and extent of any liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

# Article 14
## MISCELLANEOUS PROVISIONS

**14.01    *No Admissions.*** The Plan provides for the resolution, settlement and compromise of Claims against and Equity Interests in the Debtor. Nothing herein will be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date.

**14.02    *Revocation or Withdrawal of the Plan.*** The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then the Plan will be deemed null and void in all respects, and nothing contained in the Plan will be deemed (a) to constitute a waiver or release of any Claims by or against, or Equity Interests in, the Debtor or any other Person or (b) to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

**14.03    *Settlement of Claims and Causes of Action.*** The Reorganized Debtor may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any claim or Cause of Action which the Debtor had or had power to assert immediately prior to the Confirmation Date and may settle or adjust such claim or Cause of Action.

**14.04    *Standard for Approval by Bankruptcy Court.*** If any of the matters described in this Plan is brought for approval before the Bankruptcy Court, any such approval will mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

**14.05   Further Assurances.**  The Debtor agrees and is authorized to execute and deliver any and all papers, documents, contracts, agreements, and instruments that may be necessary to carry out and implement the terms and conditions of the Plan.

**14.06   Headings.**  The headings and table of contents used in the Plan are for convenience and reference only and will not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

**14.07   Notices.**  All notices, requests, or other documents in connection with or required to be served by the Plan will be in writing and will be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to:

(a)    If to the Debtor or Reorganized Debtor:
       **THOMASBORO LANDCO, LLC**
       Attention:  J. Marion Uter
       11118 U.S. Hwy 31
       Spanish Fort,  AL  36527-5647

       with a mandatory copy to:

       Edward J. Peterson, Esquire
       Matthew B. Hale, Esquire
       **STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
       110 East Madison Street, Suite 200
       Tampa, FL 33602

**14.08   Contemporaneous Service.**  Copies of all notices under this Plan to any party will be given to the Debtor or the Reorganized Debtor contemporaneously with the giving of notice to such party.

**14.09   Changes of Address.**  Any entity may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court and serving same on the parties set forth above.

**14.10   Governing Law.**  Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or to the extent that the Plan or the provision of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan will be governed by, construed, and enforced in accordance with the laws of the State of Alabama, without giving effect to the principles of conflicts of law thereof.

**14.11   Limitation of Allowance.**  No attorney's fees, punitive damages, penalties, special damages, lost profits, treble damages, exemplary damages, or interest will be paid with respect to any Claim or Equity Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

36

**14.12   Estimated Claims.**   To the extent that any Claim is estimated for any purpose other than for voting, then in no event will such Claim be Allowed in an amount greater than the estimated amount.

**14.13   Consent to Jurisdiction.**   Upon any default under the Plan, the Debtor consents to the jurisdiction of the Bankruptcy Court or any successor to the Bankruptcy Court and agrees that it will be the preferred forum for all proceedings relating to any such default.  By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Cure Claim, by voting on the Plan, or by entering an appearance in the Reorganization Case, all Creditors and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and will be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Reorganization Case, including the matters and purposes set forth in Article 12 of the Plan.  The Bankruptcy Court will maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the Plan.

**14.14   Setoffs.**   Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but will not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such Holder.

**14.15   Successors and Assigns.**   The rights, benefits, duties, and obligations of any Person named or referred to in the Plan will be binding upon and will inure to the benefit of any heir, executor, administrator, successor, or assign of such Person.

**14.16   Modification of Payment Terms.**   The Debtor and the Reorganized Debtor, as appropriate, reserve the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

**14.17   Entire Agreement.**   The Plan and Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents.   No Person will be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**14.18   Severability of Plan Provisions.**   If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding,

37

alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.19** ***Confirmation Order and Plan Control.*** To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (any and other orders of the Court) will be construed together and consistent with the terms of the Plan.

**14.20** ***Computation of Time.*** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

**14.21** ***Substantial Consummation.*** The Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon commencement by the Reorganized Debtor of the distributions described in the Plan.

*     *     *     *     *

[*remainder of page intentionally blank*]

4862-0466-4361, v. 3

Dated: May 31, 2022

THOMASBORO LANDCO. LLC

BY: _____
J. Marion Uter
Manager


/s/ Edward./. Peterson
_____

Edward J. Peterson
Alabama Bar No. I 848-E68E
Stichter Riedel Blain & Postler. P.A.

110 East Madison Street. Suite 200
Tampa. Florida 33602
Telephone: (813) 229-0144
Email: epeterson@srbp.com
**ATTORNEYS FOR THOMASBORO LANDCO, LLC**